**Mack Smith DORROUGH, Gregory Mack Dorrough and Jerry Mack Dorrough, Petitioners-Appellants,**

v.

**Robert L. MULLIKIN, Associate Warden, Atlanta Federal Penitentiary, Respondent-Appellee.**

No. 77–1132

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1977.

Rehearing and Rehearing En Banc Denied Dec. 27, 1977.

Mack Smith Dorrough, pro se.

Gregory Mack Dorrough, pro se.

Jerry Mack Dorrough, pro se.

John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., for respondent-appellee.

Before BROWN, Chief Judge, and RONEY and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge.

Plaintiffs-appellants appeal from a directed verdict and judgment in favor of the defendant in the district court.

The three plaintiffs are Jerry Mack Dorrough, an inmate at the Atlanta Federal Penitentiary, and his kinsmen, who are not in custody, Mack Smith Dorrough and Gregory Mack Dorrough. The gist of the complaint against the associate warden of

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.* (5th Cir., 1970) 431 F.2d 409, Part I.

the penitentiary was that when the inmate was visited at the penitentiary by his kinsmen, the other two plaintiffs, the associate warden imposed restraints and restrictions upon visitation rights which unfairly and unlawfully discriminated against the plaintiffs. Visitation was allowed only in the visiting facilities at the segregation unit where Jerry Mack Dorrough was confined. Further, visitation was not allowed over a weekend.

We have carefully reviewed the record and affirm the trial judge's determination that the evidence failed to support the claim of discrimination and that there was no issue to go to the jury.

Another contention of appellants has caused us more concern. The plaintiffs sought discovery of the defendant in various ways. The defendant and his counsel, of the United States Attorneys office, dealt with discovery in such a cavalier fashion that it required two hearings before the district judge, the issuance of several orders, and, finally, positive directions of the trial judge on the day the case was called for trial, coupled with threats of jailing the defendant, his associates, and counsel if proper responses were not made to bring the defendant to the making of appropriate discovery in the case. The district judge was thus required to devote to this litigation an extraordinary amount of his time and attention merely to cause to be accomplished that which should have been accomplished without the intervention of the judge, at all. In view of the fact that the district judge was willing to give this time and attention to discovery and in view of the fact that, through these means, adequate discovery was finally accomplished, we decline to reverse. The plaintiffs did, ultimately, receive that to which they were entitled. Nevertheless, the issue requires some discussion.

Plaintiff Jerry Mack Dorrough, a confined inmate proceeding *pro se* appears to have prepared and filed the pleadings on behalf of himself and his fellow plaintiffs. Pertinent parts of the record disclose the following: On November 13, 1974, the plaintiffs filed a "motion" asking the court to require the defendant to produce certain documents for inspection and copying and asked for certain information from suggested witnesses. On December 18, 1974, the plaintiffs filed an amendment to the November 13th document specifying more definitely what documents the plaintiffs wished to inspect and copy.

The defendant appears to have given no attention at all to these filings, but, on January 3, 1975, the district court, interpreting plaintiffs' filings as motions to compel discovery, (see, Fed.R.Civ.P., Rule 37) when, in fact, the plaintiffs had not undertaken discovery through normal means, denied the motion and the motion as amended. On January 13, 1975, plaintiffs moved the court to reconsider the denial but, on February 3rd, the court denied the motion to reconsider in an order which explained that the three plaintiffs, two of which were not hampered by incarceration, would be required to utilize normal discovery as provided for in the law.

Thereupon, on February 7, 1975, the plaintiffs filed their request directed to the defendant for the production of documents. The first appearance of the defendant with regard to discovery was on March 8, 1975, when the defense filed a motion for a protective order asserting that plaintiffs' requests were overreaching and improper. Promptly, on March 11th, the plaintiffs filed a response to the motion for protective order.

On July 1st, the court entered an order which recited, among other things, that, ". . . plaintiff cannot be denied an opportunity to conduct necessary discovery" . . . but, ". . . pendency of this litigation cannot serve as his license to ransack . . . prison files." The district judge, in that order, set the matter for a hearing on discovery which hearing was held on either July 9th or July 10th of 1975.

On July 10th, the plaintiffs delivered written interrogatories to the defense. There being nothing forthcoming from the defendant, the plaintiffs, on September 5th, filed a motion that the defendant be held in

contempt for ignoring the interrogatories. At the July hearing, the court had directed that interrogatories be filed and had been assured by defense counsel that the defendant would respond promptly.

On September 10th, about two months after the interrogatories had been delivered and five days after the plaintiffs moved defendant's contempt, the defendant filed an answer to the interrogatories.

After reviewing the answer, the plaintiffs filed a motion for summary judgment in their favor on September 16th and the defendant responded to that motion ten days later.

On September 30th, the court entered an order on the motion for contempt. The court declined to hold the defendant in contempt but, in his order, the district judge went on to observe, "Nonetheless, the court means to make it very clear that it expects this defendant to comply with the Federal Rules of Civil Procedure as it does every litigant. Should this party or any other fail to so comply throughout the course of this litigation, the court will entertain motions for appropriate sanctions. *See*, Fed.R. Civ.P., Rule 37."

On December 22nd, the court entered an order denying the plaintiffs' motion for summary judgment.

On December 30, 1975, the plaintiffs filed "Plaintiffs' Second Interrogatories." Only four written interrogatories were included. Neither the defendant nor his counsel filed anything to indicate that they, or either of them, took any notice of the interrogatories or of the immediately preceding positively worded order of the court. Therefore, on February 24, 1976, the plaintiffs once again moved that the court cite defendant for contempt of court.

Once again, in a painstaking effort to see to it that litigants before him had the benefit of the federal rules made and provided for cases such as this, the district judge set the case for a second pre-trial conference. At that conference it appears that the attorney for the defendant assured the trial judge that the defendant would promptly produce and furnish the material requested. Upon the basis of that undertaking, the district judge denied plaintiffs' second motion for contempt as moot.

There were some other filings of documents touching upon discovery. However, it was not until the day of trial, May 6, 1976, that the defendant's answer to the plaintiffs' interrogatories, which had been filed December 30th, were furnished!

A brief review of some of the proceedings of that day will not be inappropriate.

When the case was about to be put on trial, the plaintiffs complained that they had not yet been furnished with the answers to interrogatories. After a brief discussion in which, for a moment, defense counsel asserted that all that the plaintiffs had requested had been furnished, the trial judge clearly determined otherwise and the following exchange took place:

"THE COURT: Well, tell me first why this wasn't done according to the rules, when it was filed? Does the prison think it can completely ignore orders and directions of this court?

MR. LONGLEY: No, sir. I assumed it had been done.

THE COURT: Well, I don't care what you assumed. It hadn't been done and now, a day late and ten dollars short, you drag up here and say you will do it in the future.

I am getting tired of what you will do. You obey the rules like everybody else.

Do you have this information separate and apart from all your voluminous visitation things?

MR. LONGLEY: No, sir.

THE COURT: How long will it take you to get them?

MR. CROCKETT: Three months to get it in—

THE COURT: I will give you twenty-four hours to do it and I don't care if it takes the warden and cook, you get it done. Do you understand?"

\* \* \* \* \* \*

"THE COURT: . . . Now let's see what we've got here. Pursuant to the

authority of Rule 45, Plaintiff moved the Court to order the issuance of subpoena for the following items:

One, policy statement on visitation issued by U.S. Board of Prisons in effect in August of 1974.

MR. LONGLEY: We have that presently, right here.

THE COURT: Has it been furnished to him?

MR. LONGLEY: It was—I'll tender it to him right now."

At one point, defense counsel sought to urge upon the court an objection to responding to plaintiffs' discovery requests although no objection had been timely filed under Fed.R.Civ.P., Rule 33, at any time theretofore. That belatedly oral objection was dealt with rather forcefully.

"MR. LONGLEY: . . . . At this stage, Your Honor, I'm advised that the penitentiary officials, in view of the Privacy Act, are prohibited, would have to have the consent of Meir Kahane and other inmates before they could turn over who they visited with and where, over to this man, because of the provisions of the Privacy Act. We would not be allowed to divulge that inmate's—

THE COURT: Even in Court?

MR. LONGLEY: Sir, without a Court order to view it en camera.

THE COURT: You mean if it's contended it violates the Constitution, you mean a Court can't get at it?

MR. LONGLEY: Well, Your Honor, a court can get at it—

THE COURT: Well, I'm fixing to get at it.

MR. LONGLEY: All right, sir."

The proceedings, outside the presence of the jury, continue for about 40 pages of transcript. That these proceedings understandably tried the patience of the judge is illustrated by the following exchange:

"MR. DORROUGH: As far as evidence is concerned, Judge, we'll be allowed to produce evidence to show that Mr. Mullikin has ignored court orders in the past, or—

THE COURT: You don't have to show much. I'm about to see it from right here. I'm getting concerned about that, Mr. Longley.

In fact, every time this subject comes up, I think I've solved it so that y'all are going to give him something. And three months later, it comes up you haven't given him a thing.

Now, I'm getting very tired of that.

You can tell Mr. Hogan I said so. In fact, I suggest that you do tell him, because we're going to have some changes in that department or I'm going to put somebody in jail. Do you understand? Jail."

On the next day, when proceedings resumed, defense counsel tendered the answer to plaintiffs' second interrogatories. Upon some apparent hesitation of the defense to furnish all of the records involved in discovery, the court made the following observations:

"THE COURT: I'm going to make you give every one of these records to him and if you've withheld information that you should have produced under my order, I'm telling you, Mr. Longley, you and the people who are doing it are going to jail.

MR. LONGLEY: Well, sir, I didn't even go through the records.

THE COURT: Well, if you don't want to stay out of jail, you better get through them before the day's out. I gave you twenty-four hours."

While it may be true that no such extensive quotation from a pre-trial record ought to be required in the opinion of this court, it is equally true that no such entries ought to be found in such a record. Pre-trial discovery, as originally envisioned, ought to be accomplished between the parties and their counsel without requiring the intervention of the court except in most unusual cases. When one party elects obstinately to ignore discovery requests by his opposite party, the party seeking orderly discovery has no place to turn except to the judge presiding. Then, a heavily burdened trial judge is required to superintend a procedure which ought to work, smoothly, without his atten-

tion. If blessed with unusual patience, he can plead, cajole, and direct that the parties do what they should do without any such direction. The distinguished district judge in this case displayed that patience, on several occasions, when he might readily have entered an order striking the defensive pleadings and proceeding with the case as in default. Such a remedy is within the discretion of the trial judge. Rarely would the exercise of discretion in favor of such a remedy be disturbed. Though not briefed and argued before us, because no such dismissal took place, it is doubtful that this court would have reversed such a remedy had it been exercised in this case.

A careful reading of the Federal Rules of Civil Procedure relating to discovery is commended to counsel in this case. When interrogatories are filed, the type of response available is set out. A candid and full answer must be made or the party must, candidly, state an objection to making answer and the grounds of the objection. Fed.R.Civ.P., Rules 33, 37(3); *Dollar v. Long Mfg. Co., Inc.*, 561 F.2d 613 (5th Cir. 1977). Failure to object waives any available objection and the interrogatory must be answered fully. Fed.R.Civ.P., Rule 33; *Dollar v. Long Mfg. Co. Inc., supra.* Nowhere in the rules is it provided that a litigant may, at his option, just ignore interrogatories and similar discovery documents. A party who does so, does so at the peril of inviting drastic remedy.

In the manner reviewed in this opinion, the district judge in this case did, ultimately, cause the production of the items sought by plaintiffs-appellants. Thus, all of the evidence which ought to have been available was available. As we have observed, the evidence failed to support the plaintiffs' contentions and the direction of verdict, and the judgment thereupon, is

AFFIRMED.